IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER D. NORRIS,<br>Defendant. | Case No. 12–CR–40055–JPG–2 |

**MEMORANDUM & ORDER**

Before the Court are Defendant Christopher D. Norris's Motion for Compassionate Release, (ECF No. 267), and Motion to Expedite Defendant's Motion for Compassionate Release, (ECF No. 269). For the reasons below, the Court **DENIES** Norris's motions.

I. **PROCEDURAL & FACTUAL HISTORY**

A. **The Conviction**

In 2012, a federal grand jury in this District indicted Norris for conspiracy to manufacture methamphetamine. (Indictment 1, ECF No. 1). He pleaded guilty the year after, and the Court sentenced him to a 216-month term of imprisonment. (Judgment 1–2, ECF No. 99). He is currently incarcerated at Federal Correctional Institution ("FCI") Greenville in Illinois. (Norris's Mot. for Compassionate Release at 2). His projected release date is October 14, 2027. *See Find an Inmate*, Federal Bureau of Prisons [hereinafter "BOP"] (last visited March 9, 2021).[1]

B. **The Presentence Investigation Report**

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about Norris's background and the nature and circumstances of the offense. (PSR 1, ECF No. 90).

---

[1] *Available at* https://www.bop.gov/inmateloc/.

According to the PSR, Norris conspired with several others to manufacture at least 840 grams of methamphetamine. (*Id.* at 1–6). His role was not only to steal anhydrous ammonia (a precursor drug), but also to "cook" the precursors and make the final product, crystal methamphetamine. (*Id.* at 4–5). In one episode, Norris kicked in someone's door, "sprayed him with mace, and stole seven gallons of anhydrous ammonia." (*Id.*). He used these precursors to cook methamphetamine "in his garage." (*Id.* at 6). Norris later "stated that he was introduced to methamphetamine two years previous by his brother," who "would give him $50 or a quantity of methamphetamine for each box of pseudoephedrine pills" (another precursor drug). (*Id.* at 5).

Before committing this offense, Norris had 11 prior convictions. (*Id.* at 8–12). This includes a 2001 conviction for aggravated battery when Norris struck a man "in the face with his fist, while on a public way"; a 2002 conviction for aggravated battery when Norris cut a man with a knife and struck another "in the head with a beer bottle"; a 2005 conviction for unlawful use of a weapon by a felon when Norris "possessed a dangerous knife with the intent to use it against" another; and a 2008 conviction for domestic battery when he held a woman "down with his hands, strangling her, and striking her in the forehead with his head, after having been previously convicted of violation of an order of protection." (*Id.*).

**C. Norris's Motion for Compassionate Release**

In 2020, Norris moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Norris's Mot. for Compassionate Release at 1). He contends that serious medical conditions—obesity, prediabetes, high blood pressure, high cholesterol, and "a narrow esophagus which restricts his respiratory system"—make him especially vulnerable to the COVID-19 virus. (*Id.* at 2). In brief, Norris argues that his increased risk of experiencing serious

complications if he contracts COVID-19 is an *extraordinary and compelling* reason warranting his release. (*Id.* at 3–5).

The COVID-19 virus, of course, is now a global pandemic. At FCI Greenville, one inmate currently has COVID-19, 742 have recovered, and none have died. *Coronavirus*, BOP (last visited March 9, 2021).[2]

## II. LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing *not only* that he faces an increased risk from the virus, *but also* that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Norris failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors are as follows:

  (1) the nature and circumstances of the offense and the history and characteristic of the defendant;

  (2) the need for the sentence imposed—

---

[2] *Available at* https://www.bop.gov/coronavirus.

      (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)    to afford adequate deterrence to criminal conduct;

      (C)    to protect the public from further crimes of the defendant; and

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for—

      (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

      (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

(5)    any pertinent policy statement—

      (A)    issued by the Sentencing Commission . . . ; and

      (B)    that . . . is in effect on the date the defendant is sentenced[;]

(6)    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

      Similarly, the Bureau of Prisons considers the following nonexclusive factors to determine whether extraordinary and compelling reasons warrant a sentence modification:

- Nature and circumstances of the inmate's offense.

- Criminal history.

- Comments from victims.

- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served. . . .
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).
- Whether release would minimize the severity of the offense.

Federal Bureau of Prisons, Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence* (2019).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Rather, it is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is—or is not—appropriate. *See Shannon*, 518 F.3d at 496; *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[A] district court's discretion in this area—as in all sentencing matters—is broad.").

### B. Exhaustion

Before moving for compassionate release in federal court, criminal defendants must exhaust their administrative remedies with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). In other words, they must either (1) "fully exhaust[] all administrative rights to appeal a failure of the

Bureau of Prisons to bring a motion on the defendant's behalf," or (2) wait 30 days to lapse "from the receipt of such a request by the warden, whichever is earlier." *Id.* This exhaustion requirement is a *mandatory claim-processing* rule, meaning that, " '[i]f properly invoked, [it] must be enforced . . . .' " *United States v. Sanford*, — F.3d —, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021) (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 1843, 1849 (2019)). And although the Government was not ordered to respond, the Court must still "conduct a preliminary review to determine whether the motion is . . . premature." SDIL Fourth Am. Admin. Order 265 (2020).

In his Motion for Compassionate Release, Norris concedes that he did not fully exhaust his administrative remedies. He states that he moved for compassionate release with the Bureau of Prisons on November 13, yet he moved for compassionate release here on November 30 before receiving a response. In any event, even considering Norris's administrative remedies exhausted, his Motion for Compassionate Release lacks merit as discussed below.

### C. The § 3553(a) Factors

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Director of the Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released nearly 8,000 inmates that it has identified as "suitable for home confinement" and has administered over 70,000 doses of the COVID-19 vaccine. *Coronavirus*,

BOP (last visited March 9, 2021).³ So although not bound by any BOP determination, the Court "will give the Director's analysis substantial weight . . . ." *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

With that in mind, the § 3553(a) factors weigh against a sentence modification here. First, the Court recognizes that Norris suffers from serious medical conditions that might make him more vulnerable to COVID-19. He has also served over 50 percent of his sentence, which weighs in his favor. Even so, Norris pleaded guilty to serious drug offense having already had 11 prior convictions; and his motions make little mention of the instant offense or his criminal history. Rather, he simply asserts that he "is <u>NOT</u> a danger to the community or anyone else." (Norris's Motion to Expedite at 3) (emphasis in original). Public safety, however, is paramount; and given Norris's extensive history of both drug activity and violence, the Court will not leave the matter to chance. While Norris contends that "[t]here is no valid penological reason to keep [him] in prison," the Court disagrees: The instant offense—despite Norris's attempt to downplay it by pointing to a non-retroactive change in sentencing law—was severe, facilitating the spread of highly addictive drugs to his community with no regard for the general welfare. So despite the COVID-19 pandemic and the risks it poses, Norris's incarceration remains necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to adequately deter Norris and others from committing further crimes, and to protect the public.

---

³ *Available at* https://www.bop.gov/coronavirus/.

III.　**CONCLUSION**

The Court **DENIES** Defendant Christopher D. Norris's Motion for Compassionate Release and Motion to Expedite Defendant's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Tuesday, March 9, 2021**

<u>S/J. Phil Gilbert</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**