IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

   Plaintiff,

      v.

CHRISTOPHER D. NORRIS,

   Defendant.

Case No. 12-cr-40055-JPG-1

## MEMORANDUM AND ORDER

### I.    Introduction

This matter comes before the Court on Defendant Christopher D. Norris ("Defendant" or "Norris") motion to reduce sentence. (Doc. 1250). Norris moves for a motion to reduce under 18 U.S.C. § 3582(c)(1)(A), a motion for compassionate release. The United States of America ("Government") opposes the motion. (Doc. 338). Norris has filed a reply. (Doc. 341).

Norris argues that COVID-19, extreme obesity, high blood pressure, multiple surgeries on his wrist, liver issues, and narrow esophagus provide "extraordinary and compelling reasons" justifying release. Further, Norris argues that he has he has been a model inmate and is rehabilitated. Further, Norris argues if he were sentenced today he would have been home for years, has served over 80% of his sentence, he will drop to a low level of recidivism this year, his crime was not a crime of violence, his anger issues have been dealt with, and he plans to live with his wife and children upon release. Additionally, in a supplement, Norris indicates that the US Sentencing Commission has presented amendments to the First Step Act under 18 U.S.C. § 3582(c) indicating that unusually long sentences could amount to "extraordinarily and compelling" reason justifying release, of which is sentence is. (Doc. 342).

The First Step Act expanded the existing compassionate release provisions of federal law

by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction. . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request.

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy

statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2).[1] The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

> **(A)   Medical Condition of the Defendant.—**
>   (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>   (ii)  The defendant is—
>     (I)   suffering from a serious physical or medical condition,
>     (II)  suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> * * *
>
> **(D)   Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180. The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis. *Gunn*, 980 F.3d at 1180.

In a supplement, Norris indicated that proposed amendments by the US Sentencing Commission, which were delivered to the US Congress on April 27, 2023, allow this Court an additional basis for "extraordinary and compelling reasons" justifying release. Outside congressional action, the amendments are effective November 1, 2023. The proposed amendments cite to new modifications to the list of specified extraordinary and compelling reasons, including "Unusually Long Sentences." The modification permits:

> non-retroactive changes in law (other than non-retroactive amendments to the Guidelines Manual) to be considered extraordinary and compelling reasons warranting a sentence reduction, but only in narrowly circumscribed circumstances. Specifically, where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, the change in law can qualify as an extraordinary and compelling reason after the court has fully considered the defendant's individualized circumstances.

United States Sentencing Commission, Amendments to the Sentencing Guidelines, USSG §1B1.13, p.s. (April 27, 2023), (effective date November 1, 2023),

---

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023. The Court now turns to the specifics of Norris's case.

## II. Compassionate Release

A motion for compassionate release allows individuals suffering from a terminal illness, a serious medical condition, cognitive impairment, deteriorating health from aging, or some other "extraordinary and compelling reason" justifying release. Sanders is 40 years of age and currently incarcerated at FCI Greenville. His release date is October 14, 2027. https://www.bop.gov/inmateloc/ (last visited May 8, 2023).

Norris was sentenced on January 25, 2013 to 216 months based on a guilty plea of conspiracy to manufacture methamphetamine. (Doc. 72). According to the Pre-Sentence Report ("PSR"), Probation determined Norris was a career offender because of three prior felony convictions for crime of violence. (Doc. 90). These felony convictions included aggravated battery in case number 01-CF-157, aggravated battery in case number 02-CF-420, and domestic battery in case number 08-CF-352. *Id*. at ¶ 32. Norris's advisory range was 188-235 months based of an adjusted offense level of 31 and criminal history category VI.

Norris has previously filed for compassionate release, which the Court denied for failure to comply with the statutory exhaustion requirement. Norris appealed that decision, and the Seventh Circuit Court of Appeals affirmed. *United States v. Norris*, No. 21-1968, 2022 WL 1091564, at *1 (7th Cir. Apr. 12, 2022). Additionally, the Seventh Circuit held that the district court did not abuse its discretion in concluding that the § 3553(a) factors weighed against release in light of the serious nature of manufacturing methamphetamine and Norris's history of violence. *Id*. at *2.

First, Norris states that COVID-19 is "present and prevalent within the institution." (Doc.

333 at 1). The Court acknowledges the particular danger posed to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . " *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Furthermore, the BOP has already administered more than 350,240 doses of a COVID-19 vaccine in total and completed 1,389 inoculations. There are currently 1,271 inmates at FCI-Greenville, where Norris is currently incarcerated, and it has inoculated 1,329 inmates, s*ee* BOP, COVID-19 vaccine implementation, https://www.bop.gov/ coronavirus/ (visited May 11, 2023), which will greatly reduce the threat to inmates from the disease. Additionally, at FCI-Greenville there are currently 0 inmates who have tested positive for COVID-19. Additionally, 632 inmates have recovered from the virus and 0 inmates died from the pandemic. *See* BOP, COVID-19 Cases https://www.bop.gov/coronavirus/index.jsp (visited May 11, 2023).

      The Seventh Circuit Court of Appeals has explained "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for" compassionate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). While *Broadfield* was issued before the rise of the Omicron variant of the COVID-19 virus, *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), the Court notes that the BOP has reported there are 0 inmates who have tested positive for the virus in FCI-Greenville. Additionally, Norris has received the Moderna vaccine, which the CDC has stated is the best public health measure to protect people and "lowers the risk of getting very sick, being hospitalized, or dying from COVID-19." *See* How to Protect Yourself & Others, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited May 11, 2023).

Because Norris has been vaccinated, FCI-Greenville is at a Level 1 Operations due to COVID-19 (lowest risk level), and the Seventh Circuit has made it clear the availability of the vaccine has made it impossible that risk of COVID-19 is an "extraordinary and compelling" reason justifying release, the Court also finds that the risk to COVID-19 in FCI-Greenville is not a reason justifying release.

Next, Norris indicates his extreme obesity justifies release. According to Norris's PSR, at the time of sentencing he weighed at 195 pounds. (Doc. 90 at ¶ 78). According to medical records from May 15, 2022, Norris weighed around 245 pounds. (Doc. 338 at 17-18). The Government takes the position that Norris does not meet his burden to show that he as of January 2023, when he filed his motion, he is obese because he may have returned to 195 pounds by January. The Court does not find this argument persuasive. Norris indicates that as of filing of his motion, he weighed 255 pounds. (Doc. 341 at 3). However, even if Norris is obese, it is not enough to justify release, even in conjunction with his other health conditions and generalized fear of COVID-19. *United States v. Rucker*, 27 F.4th 560, 562 (7th Cir. 2022) (finding district court did not err in denying compassionate release where inmate was obese, had hypertension, and COVID-19 infection).

Additionally, the Court finds Norris's high blood pressure, liver issues, and narrow esophagus similarly do not rise to the level of "extraordinary and compelling" reasons justifying release. *United States v. Barbee*, 25 F.4th 531 (7th Cir. 2022) (prisoner failed to establish compassionate release due to medical conditions, including diabetes, hypertension, and obesity, given that COVID-19 vaccines were available, prisoner received two doses of vaccine, and prisoner did not present any evidence he was more at risk for adverse outcome in prison than if released). It appears from Norris's medical records that he has been receiving medical care for his

concerns, including his surgeries on his wrist.[3]

Next, Norris claims that he has been rehabilitated and fixed his anger issues. However, post-conviction rehabilitation is not extraordinary and compelling because the Court cannot find that Norris's good behavior and programming is so uncommon that is qualifies as "extraordinary" or so forceful that it is "compelling." *United States v. Proctor*, No. 5:11-cr-30-TBR, 2021 WL 1992131, at *8 (W.D. Ky. May 18, 2021), reconsideration denied, No. 5:11-cr-030-TBR, 2021 WL 5912160 (W.D. Ky. Dec. 14, 2021); *See United States v. Powell*, No. 2:12-cr-20052-2, 2021 WL 613233, at *3 (E.D. Mich. Feb. 17, 2021). While the Court lauds Norris's efforts in prison and urges Norris to continue as it will help him when he gets released in a few short years, that does not provide a basis to this Court to reduce Norris's sentence or release him.

Next, even though the amendments to the First Step Act are not effective until November 1, 2023, the Court may still consider Norris's claim that his "unusually long" sentence is an "extraordinary and compelling" reason justifying release. The US Sentencing Commission indicates that in order for defendant's sentence to be considered an "extraordinary and compelling reason," the defendant must be serving an "unusually long sentence," defendant must have served at least 10 years of the sentence, and there must be an intervening change in the law that has produced a gross disparity between the sentence served and sentence imposed at the time motion has been filed. Because Norris was sentenced on January 25, 2013, Norris has served at least 10 years.

Norris indicates that because his co-defendants are already home, there is a sentence disparity. (Doc. 341 at 5). However, the proposed amendment indicates there must be a disparity

---

[3] To the extent Norris is challenging the conditions of his confinement and indicating his medical care has been deficient, those are properly brought forth under civil rights claim. *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (If a prisoner is "challenging the conditions rather than the fact of confinement, ... his remedy is under civil rights law.")

between an intervening change in the law that has produced a gross disparity between sentence served and sentence imposed. Norris indicates that ghost dope, inadequate factual basis for drug quantity reported in the PSR, and unsupported statements "from people who had everything to gain and nothing to lose by lying about what he did and the amount of drugs he was involved in." (Doc. 341 at 1-2). Norris's argument is not an "intervening change in the law" that produced a disparity and is improperly made in a motion for compassionate release. This argument is properly made in a motion to correct sentence under 28 U.S.C. § 2255. *Dillon v. United States*, 560 U.S. 817, 831, 130 S. Ct. 2683, 2693–94, 177 L. Ed. 2d 271 (2010); *United States v. Black*, 783 F. App'x 629, 630 (7th Cir. 2019) ("To the extent Black argues that he no longer qualifies as a career offender, a § 3582(c)(2) motion is not the proper vehicle to challenge a career-offender designation."). Prisoners cannot avoid the AEDPA's rules by inventive captioning. Any motion filed in the district court that imposed sentence, and substantively within the scope of § 2255, is a motion under § 2255, no matter what title the prisoner plasters on the cover." *Vitrano v. United States*, 643 F.3d 229, 233 (7th Cir. 2011) (citations omitted). Therefore, Norris's sentence is not an "extraordinary and compelling reason" justifying release.

 Even though the Court finds that there is no extraordinary and compelling reason that warrants release, the Court will still evaluate how the § 3553 sentencing factors weigh against release. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("Because Ugbah cannot establish an extraordinary and compelling reason for release, it was unnecessary for the district judge to consider the § 3553(a) factors at all.").  The Court believes it is still important for Norris to serve out the remainder of his sentence in prison because of the seriousness of his offenses.

 When Norris moved for compassionate release in 2021 the Court denied his motion for compassionate release on the basis that Norris failed to exhaust his administrate remedies to the

BOP. At that time, the Court evaluated the § 3553(a) factors and found that even if Norris had exhausted his remedies, the factors weighed against a sentence modification. The Court previously found that while he had served more than half his sentence, and suffers from medical conditions that make him more vulnerable to COVID-19, it was still important to serve the remainder of his sentence. Norris pleaded guilty to serious drug offense having already had 11 prior convictions[4], including for violent offenses for which made him a career offender. The Court noted, and further notes that he has an extensive history of drugs and violence. The Court finds that Norris's incarceration remains necessary to reflect the seriousness of the offense, promote respect for the law, to provide just punishment, and to adequately deter Norris and others from committing future crimes, and to protect the public.

### III.    Conclusion

The Court hereby **DENIES** Norris's Motion for Compassionate Release (Doc. 333).

**IT IS SO ORDERED.**
**Dated: May 18, 2023**

/s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

[4] Additionally, the Court notes at the time of his sentence, Norris had three cases involving domestic battery pending involving putting a woman in a headlock, pinning that woman against her vehicle with his forearm against her throat, and striking a different woman with his fist, and hitting a third individual in the face with his fist. (Doc. 90 at ¶¶ 51, 54 56).